**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 29 2014, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DOUGLAS R. LONG**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JEREMY RICHARD ROBERTS,     ) | |
|       ) | |
|     Appellant-Defendant,     ) | |
|       ) | |
|       vs.     ) | No. 48A05-1404-CR-145 |
|       ) | |
| STATE OF INDIANA,     ) | |
|       ) | |
|     Appellee-Plaintiff.     ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Angela Warner Sims, Judge
Cause No. 48C01-1308-FD-1529

**September 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Jeremy Richard Roberts ("Roberts") appeals his convictions and sentence for Strangulation, a Class D felony,[1] and two Class A misdemeanors, Domestic Battery[2] and Battery.[3] We affirm.

## Issues

Roberts presents three issues for review:

I.    Whether there is sufficient evidence to support his conviction for Strangulation;

II.   Whether the trial court abused its discretion in the admission of evidence; and

III.  Whether the aggregate three-year sentence is a product of an abuse of discretion or is inappropriate.

## Facts and Procedural History

On August 9, 2013, Roberts and his girlfriend, Jessica Ring ("Ring") decided to host a bonfire at their home for friends Lori Landers ("Landers") and David Reyes ("Reyes"). In preparation, they purchased a bottle of vodka. Roberts began drinking from the bottle before the guests arrived.

At some point, Ring went into the back yard and discovered that Roberts had set a sofa on fire. Upset that the burning sofa was very near a tree and presented a fire hazard,

---

[1] Ind. Code § 35-42-2-9. The offense is now a level 6 felony.

[2] I.C. § 35-42-2-1.3.

[3] I.C. § 35-42-2-1.

Ring began to run back and forth with pails of water to extinguish the fire. She yelled at Roberts, who merely laughed in response.

Ring went into the house and was standing at a DVD player when Roberts entered. He moved behind Ring, placed his hands around Ring's neck, with his fingers touching, and squeezed. Ring briefly felt as if the squeezing "blocked off her airway" and she felt pressure in her head. (Tr. 130.) Roberts released his grip, calling Ring a "bitch" and "whore." (Tr. 131.)

Around fifteen minutes later, Landers and Reyes arrived and went into the back yard by the bonfire. Roberts greeted Reyes by asking: "What's up man? How you been?" (Tr. 238.) Roberts then asked Reyes: "What's the capitol of Thailand?" and Reyes responded: "Bangkok," whereupon Roberts struck Reyes twice in the groin. (Tr. 238.) Reyes announced that he was ready to leave; however, Landers wanted to visit with Ring. Landers and Reyes went into the house. Roberts followed.

Inside the house, Roberts was "running around … acting crazy." (Tr. 135.) He began shoving Reyes. He then called Ring a "bitch" and slapped her in the face. (Tr. 137.) Landers, Ring, and Reyes went outside to leave in Lander's truck; Roberts followed and pushed Reyes down in the gravel driveway. When Reyes attempted to stand, Roberts pushed him down again. Eventually, Reyes was able to stand and get into the truck. Landers drove to a nearby private club to summon police, while Roberts gave chase on a bicycle. Eventually, Roberts gave up the chase, went home and drank more vodka. Police officers found him asleep on a sofa, woke him and placed him under arrest.

Roberts was charged with Strangulation and Domestic Battery for his conduct against Ring and Battery for his conduct against Reyes. On March 6, 2014, a jury found Roberts guilty as charged. He was sentenced to three years imprisonment for Strangulation, and one year imprisonment for each of the Battery convictions. The sentences were to be served concurrently, providing for an aggregate sentence of three years. This appeal ensued.

**Discussion and Decision**

<u>Sufficiency of the Evidence</u>

Roberts claims that, although he admittedly perpetrated an unwanted touching upon Ring, the State failed to establish the elements of Strangulation. Specifically, the State was required to prove beyond a reasonable doubt that Roberts touched Ring in a rude, angry, or insolent manner, and knowingly or intentionally applied pressure to her throat or neck or obstructed Ring's nose or mouth in a manner that impeded Ring's normal breathing or blood circulation. Ind. Code § 35-42-2-9.

The standard by which we review alleged insufficiency of the evidence to support a criminal conviction is well-settled:

> When reviewing the sufficiency of the evidence to support a conviction, "appellate courts must consider only the probative evidence and reasonable inferences <u>supporting</u> the verdict." McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005) (emphasis added). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. Wright v. State, 828 N.E.2d 904 (Ind. 2005). To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it "most favorably to the trial court's ruling." <u>Id.</u> Appellate courts affirm the conviction unless "no reasonable fact-finder <u>could</u> find the elements of the crime proven beyond a reasonable doubt." Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000) (emphasis added). It is therefore not necessary that the evidence "overcome

4

every reasonable hypothesis of innocence." Moore v. State, 652 N.E.2d 53, 55 (Ind. 1995). "[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001).

Drane v. State, 867 N.E.2d 144, 146-47 (Ind. 2007).

Ring testified that Roberts put his hands around her throat; he had his left hand around the front and his right hand around the back and his fingers touched. Roberts then "squeezed for a few seconds." (Tr. 130.) Ring felt pressure in her head and felt that she could not breathe. Ring explained that the squeezing "blocked off [her] airway for a minute." (Tr. 130.) This is sufficient evidence from which the jury could conclude that Roberts committed Strangulation.

Admission of Evidence

Over Roberts' objection, the State was permitted to elicit testimony during cross-examination of Roberts that he had previously been convicted of Battery and Sexual Battery. He argues that the evidence was admitted in violation of Indiana Rule of Evidence 404(b), which provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

The rationale for the prohibition against bad act and character evidence is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. Monegan v. State, 721 N.E.2d 243, 248 (Ind. 1999). In determining whether to admit evidence of specific acts under the rule, the trial court is to: (1) determine whether the evidence of other crimes, wrongs, or acts

5

is relevant to a matter at issue other than the defendant's propensity to commit the charged act; (2) determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act; and (3) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. Camm v. State, 908 N.E.2d 215, 22 (Ind. 2009).

The decision to admit or exclude evidence is a matter within the sound discretion of the trial court. Hape v. State, 903 N.E.2d 977, 991 (Ind. Ct. App. 2009), trans. denied. We afford the evidentiary decision great deference upon appeal and reverse only when a manifest abuse of discretion denies the defendant a fair trial. Collins v. State, 826 N.E.2d 671, 677 (Ind. Ct. App. 2005), trans. denied. An abuse of discretion has occurred when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id.

Additionally, otherwise inadmissible evidence may become admissible where the defendant "opens the door" to questioning on that evidence. Jackson v. State, 728 N.E.2d 147, 152 (Ind. 2000). The evidence relied upon to "open the door" must leave the trier of fact with a false or misleading impression of the facts related. Id.

Roberts elected to testify in his own defense. During his direct testimony, Roberts conceded that he had placed his hands on Ring's neck but claimed that Ring was angry with him and he "didn't want it to escalate." (Tr. 232.) Roberts testified:

> I didn't want it to escalate but I didn't, I don't want to hurt her. I don't want to hit her. So I was trying to stop it at that point from going that far. To try to touch her in a way that wasn't painful or hurt her but you know, let her know it

6

doesn't, don't let it go there. You know, I was trying to just break the violence.

(Tr. 232.) Additionally, Roberts testified that Ring had "smacked," choked, and pushed him, Landers had punched him, and Reyes had shoved him. (Tr. 235.) Roberts repeatedly insisted that he would not hurt Ring.

In short, Roberts created an impression for the jury that others had been aggressive with him but he was a peaceful person who would act to diffuse a volatile situation. The trial court did not abuse its discretion by finding that Roberts offered misleading testimony that opened the door to testimony regarding his prior convictions for acts of violence.

### Sentencing

Upon conviction of a Class D felony, Roberts was subject to a sentence of between six months and three years, with one and one-half years as the advisory term. I.C. § 35-50-2-7.[4] Upon conviction of a Class A misdemeanor, Roberts was subject to a sentence of up to one year. I.C. § 35-50-3-2. As such, Roberts received a maximum sentence for each of his convictions, to be served concurrently. When imposing this sentence, the trial court found Roberts' criminal history and his violation of the conditions of pre-trial release to be aggravators, and found Roberts' remorse to be a mitigator.

Abuse of Discretion.

"So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds, 875 N.E.2d 218 (Ind. 2007) (Anglemyer II). This includes the finding of an

---

[4] This statutory provision was modified, effective July 1, 2014, to include the penalty for level 6 felonies.

aggravating circumstance and the omission to find a proffered mitigating circumstance. Id. at 490-91. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." Id. at 491.

The trial court's reasons must be supported by the record and must not be improper as a matter of law. Id. However, a trial court's sentencing order may no longer be challenged as reflecting an improper weighing of sentencing factors. Id. A trial court abuses its discretion if its reasons and circumstances for imposing a particular sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Hollin v. State, 877 N.E.2d 462, 464 (Ind. 2007).

An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant. Anglemyer II, 875 N.E.2d at 220-21.

Roberts asserts that the trial court abused its sentencing discretion in its finding of aggravators and mitigators. However, he fails to develop a cogent argument to support the bald assertion. To the extent that he argues "the court should have given more weight to the defendant's leading relatively a law-abiding life for a substantial period of time before commission of the crime, his employment opportunities, and his remorse/acceptance of responsibility," Appellant's Brief at 13, this argument of relative weight is unavailable to him. See Anglemyer, 868 N.E.2d at 490.

8

Inappropriateness.

The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of such review is to attempt to leaven the outliers. Id. at 1225. A defendant '"must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review."' Anglemyer, 868 N.E.2d at 494 (quoting Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The nature of Roberts' offenses is that he strangled and struck his live-in girlfriend. He repeatedly struck his friend Reyes, and pushed him down as he tried to help Ring escape.

Roberts has a significant criminal history, including six prior felony convictions. He twice violated the terms of probation and he violated the terms of pre-trial release in the instant case by contacting one of the victims.

Having reviewed the matter, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B), and the sentence does not warrant

appellate revision.  Accordingly, we decline to disturb the sentence imposed by the trial court.

## Conclusion

Roberts' conviction for Strangulation is supported by sufficient evidence.  He did not demonstrate that the trial court abused its discretion in evidentiary rulings or sentencing. Roberts' three-year aggregate sentence is not inappropriate.

Affirmed.

NAJAM, J., and PYLE, J., concur.